UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW JOSEPH McDONOUGH,

        Plaintiff,                  CIVIL ACTION NO. 15-cv-11916

        v.                    DISTRICT JUDGE AVERN COHN

COMMISSIONER OF           MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Matthew Joseph McDonough seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 9) and Defendant's Motion for Summary Judgment (docket no. 11).  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 2.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.      RECOMMENDATION

For the reasons that follow, it is recommended that the Court should GRANT Plaintiff's Motion for Summary Judgment (docket no. 9) and DENY Defendant's Motion for Summary Judgment (docket no. 11), and REVERSE and REMAND the decision of the Commissioner for an award of benefits.

## II.    PROCEDURAL HISTORY

On September 6, 2012, plaintiff filed an application for a period of disability, disability income benefits (DIB) and supplemental security income (SSI).  (Tr. 20).   The application alleged a disability beginning on March 23, 2010.  (*Id*.)   The Social Security Administration initially denied plaintiff's claim on December 27, 2012, and plaintiff requested a *de novo* hearing.  (*Id*.)   On December 17, 2013, plaintiff appeared with counsel and testified at the hearing before Administrative Law Judge (ALJ) David A. Mason, Jr.  (Tr. 37-66.)  In a February 21, 2014 decision, the ALJ found that plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy.  (Tr. 20-32.)  The Appeals Council declined to review the ALJ's decision (Tr. 8-13), and plaintiff commenced this action for judicial review (docket no. 1), and the parties have filed cross motions for summary judgment.  (Docket nos. 9, 11.)

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 9 at 7-10) and the ALJ (Tr. 26-29) each set out a detailed, factual recitation with regard to plaintiff's medical record and the hearing testimony.   Defendant, concurs with plaintiff's recitation of the relevant facts to the extent they are consistent with the facts stated by the ALJ, which the Commissioner adopts.  (Docket no. 11 at 2.)   Having conducted an independent review of plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, the undersigned will incorporate the factual recitations by reference.   Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ initially determined that plaintiff was born on March 6, 1967 and was 43 years old on the alleged disability date. (Tr. 30.)  The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 23, 2010.  (Tr. 23.)  Next, the ALJ concluded that plaintiff suffered from the following severe impairments: bipolar disorder. (*Id.*)   The ALJ then found that plaintiff did not have an impairment or combination of impairments that met medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 23-25.)

The ALJ then found that plaintiff had the following residual functional capacity (RFC):

> the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: [he] is limited to simple routine repetitive tasks in a work environment that is free of fact [sic] pace production requirements involving only simple work related decisions, with few if any work place changes, and no tandem work.  She [sic] is capable of work requiring occasional contact with the general public and brief and superficial contact with co-workers and supervisors. The claimant would be "off-task" up to 8% of the workday due to his conditions.

(Tr. 25.)  The ALJ then determined that plaintiff could not perform any of his relevant past work as a warehouse clerk, English instructor, caregiver and peer counselor.  (Tr. 30.)  Subsequently, in reliance on the VE's testimony, the ALJ determined that based on claimant's age, education, work experience, and RFC, plaintiff was capable of performing a significant number of jobs in the national economy.  (*Id.*)  Therefore, the ALJ found that plaintiff was not disabled under the Social Security Act at any time from March 23, 2010, through the date of the decision.  (Tr. 32.)

## V.   LAW AND ANALYSIS

### A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.   Judicial review of the Commissioner's decisions is limited to determining

whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, plaintiff was required to show that:

(1)      Plaintiff was not presently engaged in substantial gainful employment; and

(2)      Plaintiff suffered from a severe impairment; and

(3)      The impairment met or was medically equal to a "listed impairment;" or

(4)      Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If plaintiff's impairments prevented plaintiff from doing past work, the Commissioner, at step five, would consider plaintiff's RFC, age, education, and past work experience to determine if plaintiff could perform other work. If not, plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C.      Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994)

(citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter

upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the

decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. §

405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is

reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011

WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).  The court can

reverse the decision and immediately award benefits  if all essential factual issues have been

resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher*, 17

F.3d at 176.

Plaintiff asserts that this matter should be reversed for an award of benefits under

sentence four because (1) the ALJ committed reversible error by failing to give "proper weight"

to plaintiff's treating psychiatrist which would have established that plaintiff's mental

impairment met or equaled Listed Impairment 12.04; (2) substantial evidence in the record

established that plaintiff's mental impairment met or equaled Listed Impairment 12.04; and (3)

all factual issues have been resolved and the record adequately establishes plaintiff's entitlements

to benefits such that this case should be remanded, not for further proceedings, but for an award

of benefits.  (Docket no. 9 at 1, 24.)

### 1.    *The Treating Physician Rule*

In this argument, plaintiff challenges the weight the ALJ gives to his treating psychiatrist,

Dr. Gary Koloff, who has been treating plaintiff for his bipolar I disorder since December 2011.

On December 4, 2013, Dr. Koloff gave testimony regarding his treatment and opinions of

plaintiff relative to his bipolar disorder.  He diagnosed Plaintiff with Bipolar Affective Disorder,

Type 1, the more severe form of bipolar disorder (Tr. 412-413).  He described Plaintiff's

symptoms, as follows: he gets depressed when under stress, gets hypomanic and doesn't sleep, is involved in poor judgment, impulsivity, loses insight, and spends his time in a depressed phase or fixed phase where he has symptoms of both depression and mania (Tr. 414-415). After reviewing the history and treatment, Dr. Koloff was asked to refer to the Listing of Impairments on Mental Disorders. He identified that Plaintiff's condition is equal in severity to section 12. 04 on Affective Disorders (Tr. 419). He noted that, among the medical requirements of the depressive syndrome category, Plaintiff exhibits eight of the nine characteristics (Tr. 419-423), and that among the medical requirements of the manic syndrome category, he displays five of the eight characteristics (Tr. 423-424). He further testified that all four of the functional requirements of affective disorder are exhibited (Tr. 425-426).

Dr. Koloff gave his opinion regarding what Plaintiff could do on a competitive basis. His response was that "with his inability to organize his thinking and really execute a day's work, even alone he would struggle. He would have trouble making it into work. He would have trouble staying on task. He would have trouble completing tasks. He would have trouble recognizing when he needed help with something ... [a ]nd the side effects of his medication are also significant. He's always exhausted."(Tr. 432-433). When asked for the most significant limiting factors that would prevent him from competitive work, he stated that "his ability to get in and be there is one and then his ability to actually execute and be able to stay focused and do his job would be the other. His judgment is significantly bad as is his ability to stay on task" (Tr. 433).

Pursuant to 20 C.F.R. §§ 404.1527(d) and 416.927, an ALJ is to "evaluate every medical opinion" submitted in light of a variety of listed factors, which include the nature of the treatment relationship, the supporting medical basis for the opinion, and overall consistency with

the larger  record. The regulation also sets out a presumptive sliding scale of deference to be

given to various types of opinions. An opinion from a treating physician is "accorded the most

deference by the SSA" because of the "ongoing treatment relationship" between the patient and

the opining physician. *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 875 (6th Cir.2007) (internal

quotation marks omitted). A nontreating source, who physically examines the patient "but does

not have, or did not have an ongoing treatment relationship with" the patient, falls next along the

continuum. *Id.* A **nonexamining** source, who provides an opinion based solely on review of the

patient's existing medical records, is afforded the least deference. *Id.*

An ALJ must give a treating physician's opinion complete deference if it is supported by

clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial

evidence in the record.   20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).   When an ALJ determines

that a treating source's medical opinion is not controlling, he must determine how much weight

to assign that opinion in light of several factors:  (1) length of the treatment relationship and the

frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability

of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the

treating source; and (6) other factors.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors

listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No.

11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of

Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite

factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient

that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion

of the treating source or makes findings consistent with the opinion;" or (3) "where the

Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

Here, the ALJ dedicated two pages of his opinion attempting to support his conclusion that Dr. Koloff's opinions contrasted sharply with the overall record, were not consistent with his own reports and findings, and, thus, were entitled to only little weight. (Tr. 27-28). With respect to his conclusions on Dr. Koloff's opinion, the ALJ observed:

> There are no records of psychological hospitalizations, nor is there evidence of mania or decompensation….[T]he doctor relied heavily on subjective report of symptoms and limitations provided by [plaintiff]…yet…there exist good reasons for questioning the reliability of [plaintiff's] subjective complaints…[T]he opinion is not consistent with his

own reports and findings or the findings of Dr. Vallabhaneni and Dr. Kaul.  Nor is his opinion consistent with the [plaintiff's] self-reported ability socialize and perform activities of daily living.  Similarly, it appears Dr. Koloff did not take into consideration the [plaintiff's] non-compliance with prescribed medication, nor did he consider how the [plaintiff's] marijuana use…affects his symptoms.

(Tr. 28.)  The ALJ further justifies the discounting of Dr. Koloff's opinion by suggesting that Dr. Koloff may have expressed this opinion in an effort to assist a patient with whom he sympathizes or to avoid unnecessary doctor/patient tension. (*Id.*)  He reiterates that plaintiff has not been entirely compliant in taking his prescribed medications, "which suggests that the symptoms may not have been as limiting as the [plaintiff] has alleged in connection with this application." (Tr. 29.)  The ALJ further notes that the medical records reveal that medications have been relatively effective in controlling the plaintiff's symptoms when he is compliant (Tr. 405.) (Tr. 29.)

Finally, the ALJ asserts that plaintiff's described daily activities contradict Dr. Koloff's opinions on plaintiff's limitations. Specifically, the ALJ finds that plaintiff has no difficulty with personal care and he is able to do laundry, drive, prepare meals/cook, decorate, watch movies and television, attend movies at a theater, spend time at a social clubhouse, listen to music, read, spend time with friends and play chess. He also notes plaintiff can shop, wash dishes, perform household chores, take runs and hikes, use a computer to write fiction, and attend his niece's sporting events. The ALJ comments that plaintiff lives alone, is autonomous and able to attend his needs independently.  (Tr. 29.)

The undersigned has reviewed the ALJ's opinion, as well as Dr. Koloff's records and agrees with plaintiff that the ALJ's reasons for according Dr. Koloff's opinions "little weight" are not supported by substantial evidence.  First, contrary to the ALJ's conclusion that Dr. Koloff's treatment records do not support his opinion, the undersigned's review of Dr. Koloff's treatment notes reveal frequent notation of sleep and eating disturbances (Tr. 382, 390, 391, 393,

395, 401, 404, 405), problems with hygiene (Tr. 370, 382, 387, 395), poor eye contact (Tr. 363, 370, 384, 393), self-adjustment of medication against Dr. Koloff's advice (Tr. 367, 405) , and distractibility. (Tr. 366, 370, 406.) Dr. Koloff's notes plaintiff often appears anxious, disaffected and scattered. (*Id.*) He also notes anhedonia (Tr. 382, 387, 389, 390, 402), and failure to keep appointments (e.g., dental, labwork). (Tr. 362, 366, 367, 368, 389, 391, 392, 393, 401).  Indeed, the undersigned's review of Dr. Koloff's hand-written notes did not reveal anything inconsistent with the opinions set forth in his testimony. (Tr. 360-406, 408-434.)

Additionally, the undersigned is not persuaded that plaintiff's lack of compliance with his medications can serve as support for discounting the opinions of his treating physician.  Courts in this district and others have ruled that plaintiffs suffering from mental impairments, particularly bipolar disorder, should not be penalized for failure to seek psychiatric treatment or non-compliance with prescription medication.  *See Kellett v. Colvin*, 2015 WL 181650 at *15 (E.D.Mich., January 14, 2015); *Kangail v. Barnhart*, 454 F.3d 627, 631 (7th Cir. 2006)(bipolar disorder may prevent the sufferer from taking her prescribed medications or otherwise submitting to treatment); *see also, Blankenship*, 874 F.2d at 1129("Appellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").  As noted by Dr. Koloff and courts addressing this issue, plaintiff's non-compliance with his medication is a symptom of his condition, not an indication that the condition is not disabling. (Tr. 417-418.)

In finding Dr. Koloff's opinions on plaintiff's functional limitations unpersuasive, the ALJ relied upon the conflicting opinion of Dr. Kaul, a nonexamining consultant who reviewed plaintiff's records through December 2012.  (Tr. 28).  As a matter of law, the conflicting opinion

11

of a non-examining source alone cannot justify the rejection of the treating physician's opinion. *Hensley v. Astrue*, 573 F.3d at 267(if the existence of a conflicting medical opinion was sufficient to deny the treating physician's opinion controlling weight, it would be a rare case indeed in which such weight would be accorded); *see also, Adams v. Massanari*, 55 F. App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)(the opinion of a non-examining physician..."is entitled to little weight if it is contrary to the opinion of the claimant's treating physician").  For the very reasons set forth in the Regulation, the opinions of Dr. Koloff, a board-certified psychiatrist with thirty years of clinical experience, which were developed after two full years of treating plaintiff (roughly 50 examinations), is entitled to deference over that of state agency consultant who never examined plaintiff but rather based his opinion solely on a review of plaintiff's records, which were not complete at the time of the review.  *See Smith*, 482 F.3d at 875.

Finally, the ALJ's notation that plaintiff was able to conduct daily activities such as watching television or washing dishes is not sufficient to discredit Dr. Koloff's belief that plaintiff would not be able to function in the workplace.  This court has consistently held that minimal activities are hardly consistent with eight hours' worth of typical work activities.  *Winn v. Comm'r of Soc. Sec.*, 615 Fed. App'x 315, 321-323 (6th Cir. 2015); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 248–49 (6th Cir. 2007) (finding that the plaintiff's daily functions, including her ability to drive, clean her apartment, care for two dogs, do laundry, read, do stretching exercises, and watch the news, were not "comparable to typical work activities" and did not justify the ALJ's discrediting her testimony).   Moreover, Dr. Koloff's treatment records are replete with notes contradicting the ALJ's conclusions.  For example, contrary to the ALJ's conclusion that plaintiff had no difficulty with personal care, there are frequent notations in Dr.

12

Koloff's records that plaintiff appears "unkempt," "disheveled" or to otherwise have poor hygiene. (Tr. 370, 387, 395.)  Dr. Koloff's records also reference plaintiff's inability to get out of bed some days. (Tr. 395.)   Notably, Dr. Koloff specifically reports that plaintiff tends to minimize his symptoms as a way to see himself as less limited. (Tr. 386.)

For the above-stated reasons, the weight the ALJ assigned to Dr. Koloff's opinion is not supported by substantial evidence.  *See Winn,* 615 Fed. App'x at 321-323.

### 2.    *Listed Impairment 12.04*

Plaintiff argues that the ALJ committed a reversible error by failing to find that plaintiff met the criteria of Listing 12.04, despite the testimony from Dr. Koloff that plaintiff demonstrated eight of the nine of characteristics listed to satisfy 12.04A(1) and that he demonstrated five of the eight characteristics listed to satisfy 12.04A(2).  Dr. Koloff also opined that plaintiff met all four of the functional limitations set forth in 12.04(B).

A claimant meets Listing 12.04 when the requirements of both A and B are satisfied, or when the requirements in C are satisfied. 20 C.F.R. Pt. 404. Subpt. P, App. 1. Subpart A may be satisfied by meeting the requirements of either subpart 1 (Depressive syndrome) or subpart 2 (Manic syndrome). 12.04A1 is satisfied by demonstrating four of the nine depressive characteristics and 12.04A2 is satisfied by demonstrating at least three of the eight manic characteristics.  12.04B is met when the characteristics exhibited in 12.04A result in two of the following:  marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

According to Dr. Koloff, plaintiff has exhibited eight of the nine 12.04A1 characteristics and five of the eight 12.04A2 characteristics.  Additionally, Dr. Koloff opined and provided

concrete examples of plaintiff demonstrating all four of the 12.04B requirements.  (Tr. 424-426.)

An ALJ is required to give controlling weight to a treating physician's diagnosis of component characteristic of a Listing, or justify with substantial evidence the decision to not do so. *Harper v. Comm'r of Soc. Sec.*, 2015 WL 4509076, at \*6 (E.D. Mich. July 24, 2015)(citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243–46 (6th Cir.2007)).   As discussed *supra*, the ALJ's justification for disregarding Dr. Koloff's findings relative to the constituent characteristics of Listing 12.04 were not supported by substantial evidence.  Hence, the ALJ's finding that plaintiff did not meet Listing 12.04 is not supported by substantial evidence.

The question then becomes whether an order of remand should be for further evaluation or for an award of benefits.  In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir.1985).

After considering Dr. Koloff's records and opinions, the undersigned concludes that there exists strong evidence that plaintiff's bipolar I disorder meets or exceeds a listed impairment under the Social Security regulations.   As such, the appropriate procedure upon remand is to reverse the decision of the Commissioner and award benefits to the plaintiff.[1]

## VI.    CONCLUSION

For the reasons stated herein, the Court should GRANT Plaintiff's Motion for Summary Judgment (docket no. 9) and DENY Defendant's Motion for Summary Judgment (docket no. 11), and REVERSE and REMAND the decision of the Commissioner for an award of benefits.

<u>**REVIEW OF REPORT AND RECOMMENDATION**</u>

---

[1] The evidence supporting a finding of disability and an award of benefits is provided by Dr. Koloff's records. Accordingly, on remand, plaintiff's onset date should be the date he began treatment with Dr. Koloff, December 20, 2011, not the alleged onset date of March 23, 2010.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 18, 2016              s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE


                              **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: August 18, 2016              s/ Lisa C. Bartlett
                                    Case Manager